IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GRETA L. ANDERSON, | No. C 05-04292 SI |
| Plaintiff, | **ORDER RE: VARIOUS POST-TRIAL MOTIONS** |
| v. | |
| AMERICAN AIRLINES, INC., | |
| Defendant. | |

Plaintiff has filed motions for attorneys' fees and for contempt. Defendant has moved for a new trial and for judgment as a matter of law. The motions are scheduled for hearing on October 31, 2008. Pursuant to Civil Local Rule 7-1(b), the Court finds these matters appropriate for resolution without oral argument and hereby VACATES the hearing. Having considered the arguments of the parties and the papers submitted, and for good cause shown, the Court hereby DENIES defendant's renewed motion for judgment of a matter of law, DENIES defendant's motion for a new trial, DENIES plaintiff's motion for contempt, and GRANTS IN PART plaintiff's motion for attorneys' fees.

**BACKGROUND**

Plaintiff Greta Anderson, a former flight attendant, brought an employment discrimination claim against defendant American Airlines under the California Fair Employment and Housing Act ("FEHA"). On July 17, 2008, after a seven-day trial, the jury returned a verdict for plaintiff, finding that defendant's perception of plaintiff's mental disability was a motivating reason for her termination. Now before the Court are the parties' post-trial motions.

**LEGAL STANDARD**

**I.     Renewed motion for judgment as a matter of law: Rule 50(b)**

Federal Rule of Civil Procedure 50(b) provides:

> If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 10 days after the entry of judgment . . . the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59. In ruling on the renewed motion, the court may: (1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law.

The party moving for judgment as a matter of law bears a heavy burden. Granting a renewed motion for judgment as a matter of law is proper when the evidence construed in the light most favorable to the non-moving party permits only one reasonable conclusion as to the verdict and that conclusion is contrary to the jury's verdict. *See Air-Sea Forwarders, Inc. v. Air Asia Co.*, 880 F.2d 176, 181 (9th Cir. 1989).

The question in a motion for judgment as a matter of law is whether there is substantial evidence to support the jury finding for the non-moving party. *See Johnson v. Paradise Valley Unified Sch. Dist.*, 251 F.3d 1222, 1227 (9th Cir.2001); *Autohaus Brugger, Inc. v. Saab Motors, Inc.*, 567 F.2d 901, 909 (9th Cir.1978). In ruling on such a motion, the trial court may not weigh the evidence or assess the credibility of witnesses in determining whether substantial evidence exists to support the verdict. *See Mosesian v. Peat, Marwick, Mitchell & Co.*, 727 F.2d 873, 877 (9th Cir.1984). Substantial evidence is more than a scintilla of evidence. *See Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Chisholm Bros. Farm Equip. Co. v. Int'l Harvester Co.*, 498 F.2d 1137, 1140 (9th Cir.1974). Rather, it is defined as such relevant evidence as reasonable minds might accept as adequate to support a conclusion even if it is possible to draw two inconsistent conclusions from the evidence. *See Landes Constr. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir.1987).

**II.     New Trial: Rule 59(a)**

Rule 59 of the Federal Rules of Civil Procedure provides that "[t]he court may, on motion, grant a new trial ... for any reason for which a new trial has heretofore been granted in an action at law in federal court."  Rule 59 gives the trial judge the power to prevent a miscarriage of justice. *Moist Cold Refrigerator Co. v. Lou Johnson Co.*, 249 F.2d 246 (9th Cir. 1957).  A new trial may be ordered to correct manifest errors of law or fact, but "the burden of showing harmful error rests on the party seeking the new trial." *Malhiot v. S. Cal. Retail Clerks Union*, 735 F.2d 1133 (9th Cir.1984).  A motion for new trial may invoke the court's discretion insofar as it is based on claims that "the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to party moving; and may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury." *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940).  Where a movant claims that a verdict is against the clear weight of the evidence, a new trial should be granted where, after giving full respect to the jury's findings, the judge "is left with the definite and firm conviction that a mistake has been committed" by the jury. *Landes Const. Co.*, 833 F.2d at 1371-72.

The authority to grant a new trial under Rule 59 "is confided almost entirely to the exercise of discretion on the part of the trial court." *Allied Chem. Corp. v. Daiflon*, 449 U.S. 33, 36 (1980) (per curiam); *see Vickery v. Fisher Governor Co.*, 417 F.2d 466, 470 (9th Cir.1969) (trial court has "wide judicial discretion" in considering new trial motion).  A trial court may grant a motion for a new trial if the verdict is "contrary to the clear weight of the evidence, or is based upon evidence which is false, or to prevent, in the sound discretion of the trial judge, a miscarriage of justice." *Roy v. Volkswagen of Am., Inc.*, 896 F.2d 1174, 1176 (9th Cir.1990) (quoting *Hanson v. Shell Oil Co.*, 541 F.2d 1352, 1359 (9th Cir.1976)).  A court may grant a motion for a new trial where the jury instructions were erroneous or inadequate, so long as the moving party demonstrates that it made a request for alternative instructions that could have corrected the "fatal flaws" in the instructions that were given. *Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247, 1258 (Fed. Cir. 2004).

**DISCUSSION**

**I.    Defendant's Renewed Motion for Judgment as a Matter of Law**

    **A.    The jury's verdict that plaintiff was capable of performing the essential functions of her job was supported by substantial evidence**

Defendant argues that there was insufficient evidence presented at trial to support the jury's verdict that plaintiff was capable of performing the essential functions of her job. A claimant bringing a disability related suit under FEHA can establish a prima facie case by proving that: (1) plaintiff suffers from a disability; (2) plaintiff is a qualified individual; and (3) plaintiff was subjected to an adverse employment action because of the disability. *Jensen v. Wells Fargo Bank*, 85 Cal. App. 4th 245, 254 (2d Dist. 2000). With regard to the second element, a "qualified individual" is an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. *See Brundage v. Hahn*, 57 Cal. App. 4th 228, 235 (1997). The jury was instructed that plaintiff had the burden of proving she was able to perform the essential duties of her job. *See* Jury Instructions, at 7.

At trial, defendant introduced evidence that the essential job duties of an airline attendant include a myriad of tasks. Of relevance here are the following: determining whether situations require emergency evacuation procedures, performing a variety of functions in emergency situations, "performing or assisting in areas of service and safety to passengers in-flight and on the ground," interacting with "disorderly, intoxicated and irate passengers," and providing "leadership, direction and assistance to passengers in unusual incidents such as bomb threats and highjacking." *See* Transcript of Proceedings ("Transcript"), at 358:15-364:11.

Plaintiff testified that she was able to perform all of her job duties. *See id.*, at 358:19-365:25. Leona Rowe, an EMT instructor, was a passenger on one of plaintiff's flights shortly before plaintiff's termination. Rowe was asked to assist when a pregnant woman on the flight began experiencing pain. Rowe testified that plaintiff "got whatever we requested, communicated with the cockpit on our behalf. . . . she made sure we were settled back in our seats okay, got names, addresses, thanked us on behalf

4

of the airline and, you know, basically was very caring and very professional." *Id.*, at 463:10-15. Rowe subsequently wrote a letter to defendant to compliment plaintiff on the way she handled the incident. *Id.*, at 463:18-20.

In addition, Alison Douglas testified that plaintiff capably assisted her in dealing with an unruly passenger on plaintiff's next to last flight. Pilot Robert LeBlanc testified that he observed plaintiff performing her job duties ably during plaintiff's last flight.

Defendant offered the expert opinion of Robert Brown, a psychiatrist whom plaintiff was ordered to meet with beginning in September, 2003. *Id.* at 303. Brown administered psychological tests on plaintiff over the course of two days and concluded that she was "unfit for duty." *Id.* at 313:22-25; 494:8-12.

According to defendant, plaintiff's evidence that she was capable of performing her job was insufficient as a matter of law to overcome Brown's medical opinion. Defendant contends that a plaintiff cannot meet his burden to prove that he can perform the essential duties of his job if he merely controverts medical evidence with lay opinion. The cases cited by defendant for the proposition that lay opinion cannot outweigh medical evidence do not provide precedential authority for this Court. Moreover, they do not support defendant's argument because they concern situations in which the employer's evidence about the employee's deficiencies was uncontroverted. In *Swonke v. Sprint Inc.*, 327 F. Supp. 2d 1128, 1132 (N.D. Cal. 2004), "plaintiff's own providers designated him as unable to work at all based on [his disability] for two years" and there was "no evidence in the record" demonstrating that plaintiff could meet his job responsibilities. *Id. Ott v. Crown Cork & Seal Co., Inc.*, No. C 96-2158, 1997 WL 231110, at *5 (N.D. Cal. Mar. 26, 1997) involved a claim under the Americans with Disabilities Act ("ADA"). The court found that the plaintiff was not a "qualified" individual within the meaning of the ADA because he was "totally disabled," according to the "uncontroverted" evidence, which included the plaintiff's own statements to the Social Security Administration that he was disabled, the fact that he sought and received disability benefits, *and* the

5

1 clinical records and medical opinions of his treating physicians. *Id.*[1]

2 In this case, the medical expert worked for the employer, plaintiff maintained that she could
3 perform the essential functions of her job, and plaintiff supported that contention with testimony from
4 witnesses who saw her performing capably shortly before the event that led to her termination. On this
5 record, the Court cannot say it was unreasonable for the jury to discredit the medical opinion of
6 defendant's expert and to conclude that plaintiff was capable of performing her job duties as an airline
7 attendant.

### B. Plaintiff was not required to provide evidence that she was medically cleared to return to work in order to prove that she was capable of performing the essential functions of her job

11 Defendant also argues that plaintiff's failure to provide evidence that she was medically cleared
12 to return to work demonstrates that there was insufficient evidence that she was capable of performing
13 the essential functions of her job. According to defendant, an absence of evidence that an employee has
14 received medical clearance proves that it was reasonable for the employer to prevent the employee from
15 returning to work. Again, defendant relies on unpublished authorities that are not precedential for this
16 Court and that do not support its position.

17 In *Roberts v. Boeing*, No. 05-6813, 2006 U.S. Dist. LEXIS 96660, at *19-20 (C.D. Cal. Sept.
18 8, 2006), the court held that the defendant employer had not met its burden on summary judgment of
19 demonstrating there was no triable issue as to whether the employee was qualified to do her job, when
20 the defendant merely asserted that the employee had failed to follow the proper procedures for certifying

---

[1] *Pesterfield v. Tennessee Valley Authority*, 941 F.2d 437 (6th Cir. 1991) has no application to this case. In *Pesterfield,* the court considered whether, under the federal Rehabilitation Act of 1973, it was reasonable for the employer's medical staff to rely on the medical report of the plaintiff's private psychiatrist. Concluding that it was reasonable for the medical staff to do so, the court held that the plaintiff had failed to prove that his employer's decision to terminate him was based on intentional discrimination. *Id.* at 443-44.
*White v. York Intern. Corp.*, 45 F.3d 357 (10th Cir. 1995) is also inapposite. In *White*, an ADA case, the employee admitted that he was unable to perform the essential functions of his job without accommodation but offered no evidence of the accommodations he required. The court found the plaintiff's "own subjective opinion" that he could have performed his job had he been reassigned was insufficient where the employer offered uncontroverted evidence that plaintiff's proposed reassignments were not feasible because they required the same physical activities plaintiff had admitted he could not perform, had no vacancies or were otherwise inappropriate for the plaintiff. *Id.* at 362.

her ability to return to work. In *Tannlund-McCoy v. Golden Gate Bridge*, No. 02-02624, 2003 U.S. Dist. LEXIS 13619, *20-22 (N.D. Cal. July 30, 2003), the court granted summary judgment to the employer on the issue of whether it provided the plaintiff a reasonable accommodation. The defendant was informed that it would be unsafe for its employee to drive a bus safely, so defendant granted the employee an unpaid leave of absence during the time she was incapacitated. The court held that under the circumstances, plaintiff's request to return to work during that period was "unreasonable on its face." *Id.* at *21.

Neither court held, as defendant in this case asserts, that in the absence of medical clearance, an employer is presumptively justified in barring an employee from returning to work. In this case, the jury heard testimony on plaintiff's job performance shortly before her termination, as well as evidence on the basis for Brown's medical opinion. The Court does not find that it was unreasonable for the jury to conclude that plaintiff should have been allowed to return to work.

### C. The jury's verdict that the decision makers who terminated plaintiff had knowledge of her perceived disability was supported by substantial evidence

The jury was instructed that plaintiff had to prove that defendant's perception that plaintiff had a mental disability "was a motivating reason for the discharge." *See* Jury Instructions, at 7. Defendant claims that the jury's verdict on this issue was unreasonable as a matter of law because there was no evidence that Russell Crisp, the decision maker, was aware of plaintiff's disability.

"[I]gnorance of a worker's protected activities or status does not afford a categorical defense unless it extends to all corporate actors who contributed materially to an adverse employment decision." *Reeves v. Safeway Stores, Inc.*, 121 Cal. App. 4th 95, 109 (6th Dist. 2004) (collecting cases). In this case, plaintiff provided substantial evidence that Crisp was not the sole decision maker. At trial, Jack Upchurch, the human resources manager, was asked whether he was involved in the decision to fire plaintiff. He responded that as manager of the operations, he would have weighed in on the proper consequences for plaintiff's "insubordination" charge. In addition, evidence at trial suggested that Rosalyn Beaty, defendant's medical director, had faxed a copy of Brown's medical report from her

7

personal fax machine. It was not unreasonable for the jury to conclude that Crisp did not act alone in deciding to terminate plaintiff and that other decision makers had knowledge of plaintiff's medical condition.

Accordingly, the Court finds that there was substantial evidence to support the jury's decision that plaintiff was qualified to perform the essential functions of her job and that decision makers at defendant company had knowledge of her perceived disability. The Court need not reach defendant's argument that plaintiff could not rely on prior examinations and employment history, because other evidence supported the jury's verdict. Defendant's renewed motion for judgment as a matter of law is DENIED.

## II.     Defendant's Motion for a New Trial

### A.     There was substantial evidence that plaintiff was capable of performing the essential functions of her job and that decision makers at defendant company had knowledge of plaintiff's medical condition

Defendant argues that a new trial is warranted because the clear weight of the evidence demonstrated that plaintiff was not capable of performing the essential functions of her job. Defendant argues that plaintiff did not meet her burden in proving this issue because she did not present medical evidence to contradict the conclusion of defendant's medical expert. Defendant assumes that lay opinion is not sufficient to overcome medical evidence. As explained above, defendant provides no authority in support of this contention and there was substantial evidence at trial to support the jury's verdict that plaintiff could perform her job.

Defendant also repeats its motion for judgment as a matter of law by arguing that plaintiff did not prove decision makers had knowledge of plaintiff's disability. As discussed above, plaintiff provided substantial evidence that Russell Crisp was not the sole decision maker and that other decision makers had knowledge of plaintiff's medical condition.

### B.     The jury award of $1,000,000 for pain and suffering was not excessive

8

The jury awarded plaintiff $1,000,000 for mental and/or emotional pain and suffering, and $238,333 for economic damages. Defendant argues that these damages are excessive and require a new trial or, in the alternative, a remittitur to reduce the damages. *See Fenner v. Dependable Trucking Co., Inc.*, 716 F.2d 598, 603 (9th Cir. 1983); Fed. R. Civ. P. 59. Whether a jury verdict is excessive in a diversity case is determined by state law. *Browning-Ferris Indus. of Vermont, Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 278-79 (1978). In California, a jury award must be set aside if it is "so grossly disproportionate as to raise a presumption that it is the result of passion or prejudice." *Pool v. City of Oakland*, 42 Cal.3d 1051, 1068 (1986).

The Court finds that the jury award for pain and suffering in this case, while high, is not excessive. The jury found that defendant intentionally discriminated against plaintiff on the basis of her perceived mental disability. The jury heard testimony from plaintiff that defendant's treatment of her took a great emotional toll on her, as did losing her job. Plaintiff also testified that she experienced anxiety, that rumors that she was mentally ill harmed her reputation, and that her loss of her job affected her immediate family and their finances.[2]

### C.     The Court properly instructed the jury

A failure to give an appropriate jury instruction is a basis for ordering a new trial. *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990). "A defendant is entitled to an instruction concerning his theory of the case if it is supported by law and has some foundation in the evidence." *Home Indem. Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322, 1329 (9th Cir. 1995). Defendant

---

[2] The Court notes that the jury explicitly asked for clarification on the scope of damages it was allowed to award plaintiff. The jury sent the Court a note, which read, "Please clarify the statement on page 10 [of the instructions], that states we must not compensate plaintiff for lost wages prior to August 22, 2003 [the date of plaintiff's termination]. Does this date limitations apply to non-economic damages as well, or are non-economic damages applicable prior to August 22, 2003?" *See* Transcript, at 1170. The Court instructed the jury that "the date limitation does apply to all damages, economic damages and non-economic damages." *Id.* at 1173. In the absence of evidence to the contrary, the Court must presume the jury followed its instructions and that its verdict "reflects the legal limitations those instructions imposed." *Cassim v. Allstate Ins. Co.*, 33 Cal. 4th 780, 803-04 (2004).

contends that the Court erred in refusing several of its proposed jury instructions.

First, defendant argues that the Court erred in failing to instruct the jury on plaintiff's burden of proving that she could perform the essential duties of her job. The Court instructed the jury as follows:

> Greta Anderson claims that American Airlines unlawfully discriminated against her based on perceived mental disability. To establish this claim, Greta Anderson must prove that she was able to perform the essential duties of her job. The ultimate burden of persuasion remains at all times with Plaintiff to show that Defendant intentionally discriminated against her because of her perceived disability.

*See* Jury Instructions, at 9. The Court rejected defendant's proposed addition to this instruction: "Her own opinion as to her abilities to perform the essential duties of Flight Attendant alone are insufficient to sustain her burden." As discussed above, defendant has provided no authority for its theory that a plaintiff's burden is heightened when a defendant presents medical evidence.

Second, defendant contends that the Court erred in denying its proposed instruction on defendant's theory that it reasonably relied on Brown's medical opinion about plaintiff's ability to perform her job. The Court instructed the jury, "An employer is entitled to rely on the opinions of a physician regarding an employee's physical and mental limitations." *See* Jury Instructions, at 9. Defendant contends that it was entitled to elaborate on this instruction by stating that plaintiff's health care providers did not give her clearance to return to work and that plaintiff offered "no admissible evidence to contradict the report of Dr. Brown." Reply in Supp. of Def. Mot. for a New Trial, at 17. The Court disagrees. Defendant was entitled to an instruction on its theory of the case, which it received, not to use the jury instructions as an opportunity to characterize the evidence for the jury.

Third, defendant argues that it was error for the Court to deny its proposed "business judgment" instruction that an employer "is free to manage its business as it sees fit, and has discretion in making employment decisions so long as it does not violate the legal standards about which you have been instructed." *See* Preliminary Joint Jury Instructions, at 35. [Docket No. 157] The Court denied this instruction because it was not relevant to the elements of plaintiff's claim. To the extent defendant was entitled to an instruction on the theory that it was entitled to make decisions based on the medical evidence available, that instruction was granted, as discussed above.

Fourth, defendant maintains that the Court erred in refusing its proposed instruction that jurors

10

may not find for plaintiff simply because they "disbelieve Defendant's evidence as to the reasons for their [sic] treatment of her." *See id.*, at 19. The Court denied this instruction because the jury was fully instructed as to plaintiff's burden of proof.

Fifth, defendant contends that the Court erred in its instruction on damages. The Court instructed the jury that it "must not compensate plaintiff for any lost wages that relate to any period when she was not ready, willing and able to work, or for any events which occurred prior to August 22, 2003." *See* Jury Instructions, at 10. Defendant sought an additional instruction that plaintiff could not be compensated for any period when she could not work because she failed to obtain medical clearance. As discussed above, defendant has provided no authority in support of its argument that a plaintiff can prove she is capable of performing her job duties only by introducing evidence that she received medical clearance. The Court has already discussed its rationale for denying defendant's additional proposed instruction on offsetting plaintiff's pension payments against her lost wages and need not revisit that issue now. *See* Order Re: Defendant's Motion in Limine No. 11. [Docket No. 166]

Sixth, defendant argues that the Court should have provided additional instruction on arriving at an appropriate figure for emotional distress damages. The Court disagrees. In accordance with California law, the Court instructed the jury that "[t]here is no fixed standard for determining the amount of emotional distress damages to award." *See* Jury Instructions, at 11; *see also Pool*, 42 Cal. 3d at 1172 n.17.

Finally, the Court did not err in refusing defendant's proposed instructions on insubordination and that an employee is not entitled to protection under discrimination laws if she violates company rules. The jury was properly instructed on plaintiff's burden of proof; defendant's instructions were therefore unnecessary. Because the Court finds it did not err in any of its rulings on defendant's proposed jury instructions, it need not reach defendant's argument that the cumulative effect of its errors warrants a new trial.

**D.     The Court did not err in its evidentiary rulings**

Defendant raises several arguments that the Court erred in admitting evidence that should have

11

been excluded under Federal Rule of Evidence 403. First, defendant moved to exclude evidence concerning plaintiff's removal from a flight on August 21, 2003. The Court denied the motion as overbroad without prejudice to defendant raising objections to specific questions of areas of testimony at trial. The Court finds that some information about the incident on August 21 was crucial to the jury's understanding of plaintiff's later claims and was properly admitted as background evidence.

Second, defendant claims that it was error for the Court to deny defendant's motion to exclude all evidence of events that took place outside California and of events that occurred a year before plaintiff filed her discrimination charge with the California Department of Fair Employment and Housing. Again, the Court properly found that this evidence could be relevant to show defendant's intent or animus toward plaintiff, but permitted defendant to object at trial to specific questions or lines of inquiry.

Finally, as discussed above, the Court considered briefing from the parties before trial on defendant's motion to offset plaintiff's pension benefits from any reward for lost wages. The Court discussed its rationale for excluding evidence of plaintiff's pension benefits. *See* Order Re: Defendant's Motion in Limine No. 11. [Docket No. 166]

The Court finds that it did not err in its jury instructions or evidentiary rulings. Defendant's motion for a new trial is DENIED.

### III.    **Plaintiff's Motion for Contempt**

Plaintiff seeks contempt sanctions against defendant for its alleged discovery abuse. On June 6, the Court denied defendant's motion to quash plaintiff's subpoena for communications between Jack Upchurch and Russell Crisp concerning plaintiff. *See* Order Re: Pretrial Motions. The Court also ordered plaintiff to effect proper service of the subpoena. While the parties continue to dispute whether service has been effected, the crux of plaintiff's motion is her contention that defendant has violated the Court's order by failing to produce the communications. Plaintiff's basis for contending that e-mails between Upchurch and Crisp exist is Upchurch's deposition testimony that he normally communicated with Crisp about plaintiff by e-mail.

1    Defendant responds that no documents responsive to the subpoena exist. Crisp states in a
2 declaration that subsequent to the Court's order, he conducted two thorough searches for responsive
3 documents. Decl. of Russell Crisp in Supp. of Def. Opp. to Pl. Mot. for Contempt., ¶¶ 5-13. The search
4 included "paper files, electronic files, hard drives, archives, computers, etc" and was conducted in the
5 presence of defendant's paralegal. Decl. of Carolyn S. Vickerman in Supp. of Def. Opp. to Pl. Mot. for
6 Contempt, ¶¶ 3, 4. The search did not include his e-mail inbox because Crisp determined that his e-mail
7 account saved no e-mails prior to 2007. Decl. of David Schorpp in Supp. of Def. Opp. to Pl. Mot. for
8 Contempt, ¶¶ 3-15. Nonetheless, defendant hired a contractor to search Crisp's archived e-mails, but
9 still found nothing. *Id.*

10   The Court finds that Upchurch's passing statement at deposition is insufficient evidence to prove
11 that the purported e-mails ever existed. In light of defendant's copious efforts since the Court's order
12 to recover any documents responsive to plaintiff's subpoena, sanctions are not warranted. Accordingly,
13 plaintiff's motion for contempt is DENIED.

15 **IV.    Plaintiff's Motion for Attorneys' Fees**

17   Plaintiff seeks $242,062.50 in attorneys' fees, with a fee enhancement of three times that
18 amount, for a total of $726,187.50. Defendant opposes the motion, arguing that fees in the range of
19 $145,744.50 to $182,187.50, with no fee enhancement, are reasonable.

20   The parties agree that plaintiff's counsel's hourly billing rate of $250 is reasonable. Plaintiff
21 does not dispute defendant's contention that plaintiff accounted for 957.50 hours of work on this case,
22 not 968.25 hours. The base amount that plaintiff can claim is therefore $239,375.

23   It is appropriate for a trial court to reduce a fee award when a plaintiff prevails on only one of
24 his causes of action. *Greene v. Dillingham Construction, N.A., Inc.*, 101 Cal. App. 4th 418, 423 (1st
25 Dist. 2002). Plaintiff does not contest defendant's calculation that counsel billed 37 hours for work on
26 dismissed claims. The Court reduces this amount by half, to 18.5. Plaintiff also does not contest
27 defendant's calculation that counsel billed a total of 36 hours in quarter-hour increments for tasks such
28 as receiving notices from the Northern District's electronic filing system. The Court reduces this

amount by one half, to 18 hours. Counsel's adjusted billable hours therefore total 921, for fees of $230,250.

FEHA provides that "the court, in its discretion, may award to the prevailing party reasonable attorney's fees and costs . . . ". Cal. Gov. Code § 12965(b). In determining the fee award, the trial court must first determine "a 'lodestar' or 'touchstone' figure, which is the product of the number of hours worked by the attorneys and a reasonable fee per hour." *Greene*, 101 Cal. App. at 422. The trial court then has the discretion to increase or reduce the lodestar figure by applying a positive or negative "multiplier" based on a variety of factors. *Id.* In arguing that the Court should apply a multiplier of three, plaintiff raises three factors as relevant here: the novelty and difficulty of issues raised in the case, counsel's skill in presenting the case, the contingent nature of the fee award, and the delay in receiving payments.

The Court finds that a fee enhancement is not warranted here. Counsel has represented plaintiff competently, but the Court finds that the hourly billing rate adequately compensates for that. Plaintiff has contracted to receive the greater of 40% of the gross amount recovered or the statutory fee award. Decl. of Gregory Redmond in Supp. of Pl. Mot. for Attorney's Fees, ¶ 4. Finally, plaintiff's contention that defendant will delay in making payments is based only on plaintiff's conclusory statement that there is "no doubt" defendant intends to delay receipt of payment. Def. Mot. for Attorneys' Fees, at 4.

Accordingly, plaintiff's motion for attorneys' fees is GRANTED IN PART for fees of $230,250.

**IT IS SO ORDERED.**

Dated: November 5, 2008

SUSAN ILLSTON
United States District Judge